# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>)<br>) Case No. 1:07CR00019<br>) |
| v. | )<br>) **OPINION** |
| JOEY FRANKLIN PHILLIPS, | )<br>) By: James P. Jones |
| Defendant. | ) Chief United States District Judge |

*Dennis H. Lee, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Joey Franklin Phillips, Pro Se Defendant.*

The defendant, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2009). Upon review of the record, I find that the § 2255 motion must be denied.

I

A grand jury of this court returned a sixteen-count Indictment on March 21, 2007, charging that Joey Franklin Phillips and his codefendant, Stephanie Heather Osborne, conspired to distribute and on numerous occasions did distribute oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C.A. §§ 841(a)(1) and 846 (West 1999 & Supp. 2009). On June 30, 2007, Phillips pleaded guilty, pursuant to a written plea agreement, to the conspiracy charge and three counts of distribution of oxycodone.

According to the Presentence Investigation Report ("PSR"), the government had acquired the following evidence against Phillips and Osborne:

> During early 2006, the Tazewell County, Virginia, Narcotics Task Force, as well as agents with the Bristol, Virginia, office of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) received information that Joey Phillips and Stephanie Osborne were involved in the distribution of large quantities of OxyContin in both Tennessee and Virginia. Therefore, an extensive investigation was launched, and the details are as follows. From July 2006 to January 24, 2007, l6 controlled purchases of OxyContin were made from Phillips and Osborne. During each of those purchases, confidential informants (CI's) purchased one or two 80 milligram OxyContin tablets for $100 per pill. As the investigation proceeded, law enforcement determined that at least four individuals were selling OxyContin for both Phillips and Osborne and an interview with one of those individuals revealed that Phillips and Osborne provided them with a list of 25 individuals and couples to whom they were allowed to sale OxyContin. In exchange for selling the OxyContin, Phillips and Osborne would give the individual one OxyContin 80 milligram tablet for every 12 pills that were sold. Agents also interviewed 11 individuals that had been purchasing OxyContin from Phillips and Osborne for the past three years.
>
> According to grand jury testimony, an unindicted individual testified that Phillips and Osborne were his OxyContin source. He stated that on one occasion, he observed a pistol laying on the console of Phillip's truck, and that same individual testified that he had been to Osborne's trailer and, in the bedroom, observed a pistol laying on her dresser. That witness also testified that he had observed a gallon ziplock baggie at Osborne and Phillips' residence which was full of 80 milligram OxyContin pills. A second witness testified that he began purchasing Oxycontin from Osborne in 2003 and 2004, up until November 2006. That witness admitted that in mid-2005, he began selling Oxycontin for Osborne and Phillips and, at one time, was selling as many as 800 to 1,000 pills per week. That individual also testified that Osborne had previously stated to him that she carried a firearm because she was afraid of getting robbed.
>
> Based on the above, authorities arrested Phillips and Osborne on March 22, 2007. Found on Phillips' person were five 80 milligram and seven 40 milligram OxyContin pills, $471, a cellular phone, and business cards. Immediately following his arrest, a search warrant was executed at the residence of Phillips and Osborne in Pounding Mill,

> Virginia. Seized from a chest of drawers in the master bedroom was ammunition, as well as two firearms, a loaded Smith & Wesson, model 36, .38 caliber five-shot revolver, serial number 288301, and a loaded North American Arms five-shot revolver, serial number L062098. Also, a Keystone Sporting Arms Inc., .22 caliber bolt-action rifle, serial number 145585, was discovered in a closet in the master bedroom. Authorities seized from the same chest $4,583 in U. S. currency, as well as a 2007 Chevrolet Tahoe and a 2007 Mitsubishi Eclipse. Discovered in a billfold belonging to Phillips were three different safe combinations. Also, various safe keys were found in the home, and it was later determined that one of the keys accessed a safe which was located at Phillips and Osborne's parents' home located in Grundy, Virginia. Therefore, authorities traveled to that residence and discovered in the safe was $122,000. Officers interviewed Osborne's father, and he advised that the safe, as well as its contents, belonged to his daughter and Phillips.
>
> Following his arrest, Phillips provided a statement to authorities and indicated that he had two narcotic sources, both of whom were residents of South Carolina. Phillips said that he had, on average, received 100 OxyContin 80 milligram pills per week for approximately one and a half to two years. Phillips admitted that he purchased each tablet for $50 and sold same for $100.
>
> . . . .
>
> In considering all statements which have been provided to authorities by both the defendants, as well as other individuals involved in the conspiracy, an estimate of the number of pills distributed range from 9,750 to over 20,000.

(PSR ¶¶ 7-11, 14.)

Pursuant to paragraphs 9 and 10 of his plea agreement, Phillips agreed to waive his right to appeal and his right to file a § 2255 motion. The parties stipulated in paragraph 5 of the agreement that Phillips would be held responsible for the distribution of between 5598 and 18,565 eighty-milligram oxycodone tablets, placing him at a base offense level of 34, and that he qualified for a four-level enhancement as a leader and organizer of the conspiracy, pursuant to United States Sentencing

Manual ("USSG") § 3B1.1(a). The probation officer found that Phillips also qualified for an additional two-level enhancement, based on his possession of a firearm. The PSR recommended that Phillips receive a three-level reduction for acceptance of responsibility, pursuant to paragraph 3 of his plea agreement, for a total offense level of 37. With his criminal history category of I, the PSR found that Phillips had a sentencing range of 210-262 months imprisonment.

I conducted a sentencing hearing on December 21, 2007 and applied the guidelines calculations as recommended by the PSR. "In consideration of the factors set forth in 18 U.S.C.A. § 3553(a) and in particular the nature and circumstances of the criminal conduct, the history and characteristics of the defendant, and the need for the sentence imposed," I sentenced Phillips to four concurrent sentences of 240 months imprisonment. (Statement of Reasons § IV.) Judgment was entered on December 27, 2007.

Phillips filed this § 2255 motion on or about December 22, 2008, alleging that his conviction is illegal based on various and frivolous and pseudo-legal arguments. The 44-page motion argues, among other things, that key provisions of Titles 18 and 21 of the United States Code were not properly enacted and published and, as such, are not valid criminal statutes; that the government is not a legal "person" for purposes of the Civil Rights Act and so his plea agreement cannot be a valid contract between two persons; that he is not guilty of a federal criminal offense because his criminal conduct occurred in the Commonwealth of Virginia, not on federal territory; that the United States Code has been copyrighted as the private international law

applicable only in the District of Columbia; and that counsel was ineffective for failing to raise these arguments before advising him to plead guilty. The government filed its Motion to Dismiss, arguing that the § 2255 motion should be dismissed because of: (1) Phillips' waiver of his right to bring a § 2255 motion; (2) Phillips' failure to raise his jurisdictional claims on direct appeal; and (3) Phillips' failure to show prejudice under *Strickland v. Washington*, 466 U.S. 668, 685 (1984), as to his claim of ineffective assistance of counsel.

II

To state a claim for relief under § 2255, a federal defendant must prove that one of the following occurred: (1) His sentence was "imposed in violation of the Constitution or laws of the United States"; (2) The "court was without jurisdiction to impose such sentence"; or (3) The "sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C.A § 2255(a). In a § 2255 motion, the defendant bears the burden of proving the grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir.1958).

A. WAIVER OF COLLATERAL ATTACK.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Whether the waiver is knowing and intelligent depends "upon the particular facts and

- 5 -

circumstances surrounding that case, including the background, experience and conduct of the accused." *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

The government argues that Phillips should be bound by his plea agreement waiver of his right to bring a § 2255. In support of this argument, however, the government does not provide the transcript of the guilty plea hearing. Instead, the government argument rests entirely on the plea agreement itself.

In order to determine the validity of the guilty plea, the plea agreement, and the waiver of § 2255 rights, *Lemaster* requires the court to review the defendant's statements made during the plea hearing. *See, e.g., Tignor v. United States*, No. 7:07CV00075, 2007 WL 3053307, at *1 (W.D. Va. Oct. 19, 2007) (taking government's Motion to Dismiss arguing waiver of § 2255 rights under advisement pending preparation of the plea hearing transcript, citing *Lemaster*). The defendant's signature on the plea agreement and his initials at the bottom of each page carry some weight in determining his understanding of the provisions of the plea agreement, but do not offer any evidence as to the other important elements that the court must consider in determining whether the defendant entered a knowing and voluntary guilty plea, such as his background, experience, and conduct during the plea hearing itself. *Lemaster*, 403 F.3d at 221-22; *Davis*, 954 F.2d at 186. Because the government's motion is unsupported with this necessary evidence, I must deny the Motion to Dismiss insofar as it argues that Phillips waived his right to bring this § 2255 motion.

B. Procedural Default.

The government argues that except for his ineffective assistance claims, Phillips should have raised his current issues on direct appeal. I agree. Where a petitioner in § 2255 proceedings attempts to raise claims that could have been raised on appeal, review of such issues is barred absent a showing of cause and prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Phillips fails to show cause for failing to make his current arguments on direct appeal, nor does he make any attempt to show that he is actually innocent of the conduct for which he stands convicted. Accordingly, with the exception of his ineffective assistance claims, his § 2255 claims must be dismissed as procedurally barred. *Id.; Massaro v. United States*, 538 U.S. 500, 504 (2003) (finding that federal habeas petitioner may bring claim of ineffective assistance claim in § 2255 proceedings whether or not he could have raised the claim on direct appeal).

C. Ineffective Assistance of Counsel.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland*, 466 U.S. at 687. First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 687-88. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. When the defendant alleges that counsel's error led him to enter an invalid guilty plea, he can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59. If it is clear that the defendant has not satisfied one prong of the *Strickland/Hill* test, the court need not inquire whether he has satisfied the other prong. *Strickland*, 466 U.S. at 697.

Phillips apparently argues that effective counsel would have advised him to raise all of his current jurisdictional challenges to the indictment and the plea agreement, and that if counsel had done so, Phillips would have rejected the plea agreement and proceeded to trial. This argument has no merit.

First, counsel could reasonably have believed that the best defense strategy for Phillips was straight forward negotiation with the government. The evidence against Phillips was overwhelming that he and his cohorts had obtained and distributed an enormous amount of controlled substances. The plea agreement Phillips signed limited the amount of drugs to be used in calculating his sentence and obtained the government's agreement that he would receive a sentencing break for accepting responsibility. If he had gone to trial and the government had proven the amounts of drugs mentioned in the plea agreement, Phillips would have faced a minimum sentencing range of 292 to 365 months.

Second, counsel would have reasonably believed that the obscure types of jurisdictional arguments Phillips raises here are frivolous and did not merit serious attention during the process of determining the most beneficial defensive strategy. Courts have soundly rejected the arguments he makes that the federal drug laws are unconstitutional. *See Villanueva v. United States*, No. 09-C-0479, 2009 WL 1867742, at *1 (E.D. Wis. June 26, 2009) (citing numerous cases); *Webb v. Driver*, No. 5:08CV73, 2009 WL 529827, at *3 (N.D.W. Va. Mar. 2, 2009) (same).

In short, I find that counsel followed a reasonable trial strategy in negotiating a plea bargain to limit sentence exposure in the face of a strong government case. I cannot find counsel acted ineffectively in failing to make the type of frivolous arguments that Phillips makes in his § 2255 motion. Because I find that counsel's representation was not deficient, Phillips cannot succeed on his claims of ineffective assistance under *Strickland/Hill*. Accordingly, I will grant the Motion to Dismiss as to all claims of ineffective assistance of counsel.

III

In conclusion, because the government does not support its defense that Phillips waived his right to bring this § 2255 action, I will deny the Motion to Dismiss on that ground. Because Phillips fails to establish ineffective assistance of counsel and as all of his challenges to the court's jurisdiction are procedurally barred, however, I will grant the Motion to Dismiss on these grounds. A separate Final Order will be entered herewith.

ENTER: October 22, 2009

/s/ JAMES P. JONES
Chief United States District Judge